UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

APPLE GLEN INVESTORS, L.P.,

        Plaintiff,

v.                          Case No. 8:14-cv-1527-T-33EAJ

EXPRESS SCRIPTS, INC.,

        Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant Express Scripts, Inc.'s ("ESI") Motion to Exclude Expert Testimony of Gary Keene (Doc. # 39) and Motion to Exclude Expert Testimony of Brad Johnson (Doc. # 40), both filed on April 6, 2015. Plaintiff Apple Glen Investors, L.P. ("Apple Glen") filed responses thereto (Doc. ## 45, 46) on May 6, 2015. ESI filed replies to Plaintiff Apple Glen's responses (Doc. ## 48, 49) thereafter on May 20, 2015. For the reasons that follow, the Court denies the Motions without prejudice.

**I.  Background**

Pursuant to an agreement ("the Lease") dated December 6, 1999, Apple Glen leased commercial property and equipment to ESI. (Doc. # 2 at 2). Both parties at bar are successors in interest to the original parties of the Lease, which terminated on March 31, 2014. (Id.) ESI took assignment of the Lease in November of 2001. (Doc. # 42 at 2).

On June 25, 2014, Apple Glen filed a complaint alleging that ESI breached the Lease by failing to maintain the entire leased premises, including leased equipment, in "first class condition and order of repair" and to "promptly make all repairs and replacements of every kind and nature, whether foreseen or unforeseen," pursuant to Section 12 of the Lease. (Doc. # 2 at ¶ 9). Apple Glen seeks damages in excess of $5.3 million dollars in repair and replacement costs, together with loss of rental income, diminution in marketability, and attorneys' fees. (Doc. # 42 at 17; Doc. # 2 at 4).

Apple Glen has retained a construction consultant, Gary Keene, to offer expert testimony at trial. Keene's Expert Report (Doc. # 42-1), deposition transcript (Doc. # 39-1), and affidavit (Doc. # 47-1), are before the Court. Apple Glen has also retained Brad Johnson, a managing director at a franchise appraisal firm, to provide expert testimony. Johnson's Expert Report (Doc. # 40-1) and deposition transcript (Doc. # 40-2) are before the Court. ESI moves to exclude the testimony of both proffered experts. (Doc. ## 39, 40). The Court will consider each motion in turn.

## II. Legal Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 is a codification of the Court's landmark case of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). In Daubert, the Court described the gatekeeping function of the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." Id. at 589. As stated in the Advisory Committee Notes accompanying Rule 702 of the Federal Rules of Evidence, "[a] review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule." See Advisory Committee Notes to the 2000 Amendment to Rule 702. In addition, the trial judge is afforded broad discretion in deciding Daubert issues. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

When a matter is set for a bench trial, as in the present case, however, the Eleventh Circuit has commented that "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." United States v. Brown, 415 F.3d 1257, 1269 (11th Cir. 2005). The court has also remarked

that judges serving as factfinders in the context of a bench trial are less likely than jurors to be "awestruck by the expert's mystique." Id. (citing Allison v. McGhan Med. Corp., 184 F.3d 1300, 1310 (11th Cir. 1999)).

Nevertheless, in an abundance of caution, the Court will evaluate the proffered expert testimony against the touchstones of Daubert and Rule 702. In Rink v. Cheminova, Inc., 400 F.3d 1286 (11th Cir. 2005), the Eleventh Circuit set forth a three-pronged approach to qualifying expert witnesses:

> To fulfill their obligation under Daubert, district courts must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. at 1291-1292 (internal citations omitted). The party offering an expert has the burden of satisfying each of these elements by a preponderance of the evidence. Id. at 1292; see also Allison, 184 F.3d at 1306.

### III. Analysis

#### A. Gary Keene

Apple Glen employed Keene, the principal of Keene Kilmas Consultant Group, LLC ("KKCG"), to evaluate the existing conditions of the leased premises and equipment. In the expert

4

report, Keene lists conditions and specific items that he determines to be deficient and provides an "Opinion of Probable Cost" to refurbish or replace the items in order to restore the property to a "first class condition and order or repair," pursuant to the Lease. (Doc. # 42-1 at 4). Apple Glen seeks to use the testimony of Keene, speaking on behalf of KKCG, to allege deficient conditions for twenty-five items. ESI moves to exclude Keene's testimony under Daubert and Rule 702.

According to Apple Glen, the qualifications and expertise of Keene, having over forty years of experience as a Certified General Contract and Construction Consultant, are "beyond reproach." (Doc. # 45 at 1). ESI does not challenge Keene's qualifications, but instead challenges Keene's methodology, contending that it is flawed and, thus, will not assist the trier of fact. (Doc. # 39 at 4).

Keene's Expert Report (Doc. # 42-1) describes his methodology as placing "an emphasis on determining if certain components could be refurbished or needed to be replaced so that the useful life of any given component would extend a minimum of 10 years; correlating to the term of the existing lease." (Id. at 16). When asked during his deposition about this methodology, Keene stated, "we looked at equipment and components that would need to last a minimum of ten years to be in accordance with the lease." (Keene Dep. Doc. # 39-1 at 141). From this explanation, ESI contends that Keene based

5

his report on a "10 year useful life criteria," which is not included in the Lease. (Doc. # 39 at 2). According to ESI, rather than being required to replace equipment that would need to last ten years, the Lease only provides that the tenant shall replace equipment that has "become worn out or unusable for the purpose which it is intended." (Id.). ESI alleges that "Keene's entire analysis is based on a nonexistent contract term," and, thus, his methodology is flawed. (Id.).

The Court is not convinced that the Expert Report, taken together with Keene's deposition, reveals a flawed methodology. The Expert Report alleges deficiencies that purportedly required action at the time of inspection, rather than compelling action within ten years. Keene's affidavit, filed in conjunction with Apple Glen's response to ESI's Daubert Motion, states that replacement was only suggested for items already beyond their useful life, regardless of whether their useful life would expire in the next ten years. (Doc # 47-1 at ¶ 15).

Even assuming *arguendo* that Keene's methodology was based on a "10 year useful life criteria," there is less need for the Court to exercise its gatekeeping function as to expert testimony for a bench trial. See Brown, 415 F.3d at 1269. Given that this is a nuanced issue of interpretation, ESI can establish alleged flaws in Keene's methodology adequately through cross-examination. The Court therefore finds no basis for striking Keene's testimony prior

6

to trial pursuant to ESI's Daubert and Rule 702 challenge. However, ESI may again move for exclusion of Keene's testimony if it can establish during the bench trial that Keene employed a flawed methodology.

In addition to challenging the substance of Keene's testimony, ESI suggests in its reply brief that Keene's affidavit, which was submitted in connection with Apple Glen's response to ESI's Motion for Summary Judgment, was untimely submitted and is a "sham" affidavit. ESI argues that the affidavit is inadmissible because it was filed after the discovery deadline and the supplemental disclosure deadline, which was March 30, 2015. (Doc. # 48 at 3-4). Although Keene's affidavit was filed on May 6, 2015, it does not appear that ESI was prejudiced by any belated disclosure. Keene's affidavit is an explanatory submission tendered by an expert who was known to ESI and whose expert report was filed timely. The Court does not find that Keene's affidavit would surprise ESI such that it would give Apple Glen an unfair advantage.

ESI also insinuates that Keene's affidavit should be excluded as a sham, citing Kernel Records Oy v. Mosley, 694 F.3d 1294, 1303 n.6 (11th Cir. 2012), for the proposition that a "district court may disregard an affidavit as a sham when a party to the suit files an affidavit that contradicts, without explanation, prior deposition testimony on a material fact." (Doc. # 48 at 4).

7

However, that case also states that the "sham affidavit rule should be applied sparingly." Id. (citing Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir. 2010)). In order to strike an affidavit as a sham, the Court "must find 'some inherent inconsistency' between an affidavit and the affiant's sworn testimony." Mortg. Payment Prot., Inc. v. Cynosure Fin., Inc., No. 6:08-cv-1212, 2011 WL 2670081, at *4 (M.D. Fla. July 8, 2011) (quoting Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986)).

This is not such a case where the sham affidavit rule should be applied, as Keene's affidavit acts to clarify his expert report, rather than to contradict it. The Court finds that the affidavit does not modify the prior expert report and deposition to the extent that it creates an inherent inconsistency. The Court accordingly declines to employ the draconian sanction of striking Keene's affidavit.

**B. Brad Johnson**

Retained by Apple Glen, Brad Johnson states in his Expert Report that the purpose of his retention is to:

    a. Discuss the differences between a net lease and an absolute net lease and the significance of those differences, including related trends in the commercial real estate market
    b. To review the subject Lease
    c. Inspect the subject Leased Premises
    d. Confer with construction consultants and the Maintenance Director

      e. To consult with other real estate professionals knowledgeable about real estate leasing and telecommunications infrastructure buildings
      f. To offer guidance on the expectations and obligations of the parties to an absolute net lease

(Doc. # 40-1 at 1).

    ESI seeks an order excluding Johnson's testimony under Daubert and Rule 702 arguing that Johnson's testimony will not aid the trier of fact. Johnson's qualifications are uncontested. ESI's contention that the testimony will not aid the trier of fact is premised on the claim that Johnson's role is actually to interpret the unambiguous Lease, which is a question of law for the Court. (Doc. # 40 at 2). ESI cites Johnson's deposition in which he states he was "essentially" asked to determine whether the tenant had complied with the lease. (See Id. at 1-2). Apple Glen counters that it plans to utilize Johnson's expertise to compare and contrast the Lease at bar to other types of commercial leases, highlighting that this particular Lease agreement is "extraordinary and unique." (Doc. # 46 at 2). Apple Glen underscores that "it shall not call Johnson as a witness at trial to offer legal opinions." (Id.).

    While ESI is correct in stating that an expert may not "merely tell the jury what result to reach," (Doc. # 40 at 2 (citing Montgomery v. Aetna Cas. Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990)), the danger involved with such expert testimony, namely that the jury will be unduly influenced, is not implicated in a

9

bench trial. See Brown, 415 F.3d at 1269. The Court is confident that it can discern testimony that seeks to make legal conclusions from testimony that "provides the Court with background, context and industry knowledge that are traditionally supplied by experts." (Doc. # 46 at 2). Given that Johnson is not a lawyer, there is even less risk that any potential legal analysis will influence the Court. Testimony that offers legal conclusions will be afforded no weight. As such, the Court denies ESI's Motion to Exclude Johnson's testimony. However, ESI may, if appropriate, re-articulate its challenge during the course of the trial.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Express Scripts, Inc.'s Motion to Exclude Expert Testimony of Gary Keene (Doc. # 39) and Motion to Exclude Expert Testimony of Brad Johnson (Doc. # 40) are **DENIED WITHOUT PREJUDICE**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 15th day of June, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:   All Counsel of Record

10