```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION

APPLE GLEN INVESTORS, L.P.,

              Plaintiff,
v.                                Case No. 8:14-cv-1527-T-33EAJ

EXPRESS SCRIPTS, INC.,

              Defendant.
_____/
```

**ORDER**

This cause comes before the Court pursuant to Defendant Express Scripts, Inc.'s ("ESI") Motion for Summary Judgment (Doc. # 42), which was filed on April 6, 2015. Plaintiff Apple Glen Investors, L.P. ("Apple Glen") filed a response in opposition to the Motion on May 6, 2015. (Doc. # 47). Thereafter, ESI filed its reply on May 20, 2015. (Doc. # 50). For the reasons that follow, the Court denies ESI's Motion in this breach of contract case, which is set for a bench trial during the Court's September, 2015, trial term.

**I.   Background**

Pursuant to an agreement ("the Lease") dated December 6, 1999, Apple Glen leased commercial property and equipment to ESI. (Doc. # 2 at 2). Both parties at bar are successors in interest to the original parties of the Lease, which terminated on March 31, 2014. (Id.). ESI took assignment of

the Lease in November of 2001. (Doc. # 42 at 2). In 2014, ESI and Apple Glen litigated a separate dispute as to whether ESI was a hold-over tenant from 2010 to 2014. (Doc. # 47 at 4-5). The state court entered judgment in favor of Apple Glen. (Id.).

The leased premises include a 139,000 square foot, three-story commercial office building in north Hillsborough County situated on approximately twenty acres, together with various mechanical equipment. (Doc. # 42 at 2). The premises are unique "because they were developed as a 'Mission Critical Facility,' which means [it was] designed and constructed with extraordinary levels of redundancy and reliability of critical systems," particularly "in the power service, water service, emergency power, HVAC, and communications necessary to keep the facility fully operational at all times." (Doc. # 47 at 2).

The Lease contains language putting the burden of maintaining and repairing the property and equipment on the Tenant, ESI, as follows:

> Tenant shall at all times, at the Tenant's sole cost and expense, put, keep and maintain the Leased Premises (including, without limitation, the parking areas, roof, footings, foundations, interior and exterior walls and structural components of the Leased Premises) and the Equipment in a first class condition and order of

2

> repair, except for ordinary wear and tear, and shall promptly make all repairs and replacements of every kind and nature, whether foreseen or unforeseen. . . .

(Doc. # 4-3 at ¶ 12(a)). The Lease further specifies that the Tenant, "shall from time to time replace with other operation equipment or parts any of the equipment which shall have become worn out or unusable for the purpose for which it is intended, or been lost, stolen, damaged or destroyed. . . ." (Id. at ¶ 12(d)).

Pursuant to the Lease, in the event of "failure by Tenant to perform and observe, or a violation of breach of, any . . . provision in this Lease and such default shall continue for a period of thirty (30) days after written notice thereof is given," the Landlord "may exercise any . . . right or remedy now or hereafter existing by law or in equity." (Id. at ¶¶ 20(a)(ii)-(v)).  In addition, the Lease contains a provision for "Trade Fixtures," specifying that "all telecommunications facilities and other personal property of Tenant that are Trade Fixtures shall be and remain the property of the Tenant," thus waiving any claim by Apple Glen to Trade Fixtures of ESI. (Id. at ¶ 20(f)).

Although ESI tendered monthly rental payments of $145,782.00, pursuant to the Lease, Apple Glen's Corporate

3

Representative, Andrew Dubuque, testified that the parties did not enjoy "a very friendly relationship" and that Apple Glen was concerned that the leased premises were not being properly maintained. (Dubuque Dep. Doc. # 47-20 at 6).

On July 15, 2009, Apple Glen sent a letter to ESI regarding certain equipment that was allegedly missing from the premises. (Doc. # 47-17). Therein, Apple Glen also reminded ESI of its contractual obligation to maintain the premises in a "first class condition," contending that the building was "aged" and the equipment was "obsolete." (Id. at 3). According to Dubuque, ESI did not respond to the July 15, 2009, letter. (Dubuque Aff. Doc. # 47-19 at ¶ 4).

Thereafter, Apple Glen retained Marcos Ibarguen of CMK Design Studio to inspect the property and prepare a report regarding its condition. (Id. at ¶ 7). When Ibarguen conducted his inspection of the property, ESI was operating the business and limited the amount of time Ibarguen could spend at the premises. (Id. at ¶ 8). Nevertheless, Ibarguen was able to inspect the premises and prepared a report (the "CMK Report"), which identified several aspects of the property that Ibarguen determined were not being appropriately maintained. (Id. at ¶ 9). On January 13, 2014, with the Lease approaching its end, Apple Glen sent ESI a

4

letter and a copy of the CMK report requesting that ESI contact Apple Glen to discuss problems identified in the CMK report. (Id. at ¶ 9). Once again, ESI did not respond to the letter. (Id.).

ESI vacated the property in April of 2014. (Id. at ¶ 10). Thereafter, Apple Glen was able to conduct a more thorough evaluation of the premises. (Id.). After carefully inspecting its property, Apple Glen sent ESI a videotape as well as a detailed list of issues "it could readily identify as being in breach of the Lease terms." (Id.). ESI did not respond. (Id.).

Shortly thereafter, on May 27, 2014, Apple Glen filed a state court Complaint alleging that ESI breached the Lease by failing to maintain the entire leased premises, including leased equipment, in "first class condition and order of repair." (Doc. # 2 at ¶ 9). Specifically, the Complaint enumerated the following deficiencies, among others:

> a. Building exterior and landscaping: The landscaping around the building and parking lots has not been maintained, sidewalks and parking lots require repair and/or replacement, and exterior water hydrants are not functioning. The building curtain walls show evidence of water damage and inadequate repairs throughout;
>
> b. Roof: Skylight metal framing and seals have not been installed properly and flashing sealants on roof perimeter have failed sealants;

5

>    c. <u>Interior</u>: Interior walls and ceilings of the second and third floors have stained ceiling tiles and require repair due to leaks and water intrusion, commercial grade kitchen equipment has been removed and remaining kitchen equipment requires repair or replacement; and,
>
>    d. <u>Equipment and systems</u>: Various state-of-the-art equipment and systems require repair or replacement due to the failure to maintain or upgrade the systems, including, but not limited to, the damaged or inoperable security system, HVAC system, Uninterruptable Power System, elevator units, cooling towers, fire sprinkler system, and the generator system.

(<u>Id.</u> at ¶ 12).

On June 25, 2014, ESI removed the case to this Court based on diversity jurisdiction.[1] (Doc. # 1). Thereafter, on February 19, 2015, Apple Glen secured a new lease for the premises with Citigroup Technology, Inc. (Doc. # 42 at 15). In contrast with its lease with ESI, Apple Glen assumed responsibility for all repair and maintenance of the property in its lease with Citigroup. (Doc. # 47 at 18).

At this juncture, ESI seeks summary judgment, arguing (1) that it expended millions of dollars to repair and

---

[1] According to the Notice of Removal, Apple Glen is an Indiana Limited Partnership with its principal place of business in the state of Indiana, whereas ESI is a Delaware corporation with its principal place of business in St. Louis, Missouri. (<u>See</u> Doc. # 1 at ¶ 3). The amount in controversy exceeds the $75,000.00 threshold. (<u>Id.</u> at ¶ 4).

maintain the premises and that it did not breach the Lease; (2) that Apple Glen failed to provide adequate notice of the alleged breach as required by the Lease; (3) that Apple Glen is not entitled to compensation for lost rent or excessive power bills; (4) that Apple Glen cannot establish its claim for missing equipment; and (5) that ESI was entitled to remove certain items from the property as Trade Fixtures. (See Doc. # 42). Conversely, Apple Glen contends that genuine issues of material fact preclude entry of judgment in favor of ESI. (See Doc. # 47). The Motion is ripe for the Court's review.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Pub. Co.,

9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant

summary judgment. <u>Samples on Behalf of Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)).However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

**III. <u>Analysis</u>**

    **A. <u>Maintaining the Premises and Equipment</u>**

Apple Glen contends that ESI breached the Lease by failing to appropriately maintain the leased premises and equipment. The elements of a breach of contract are: "(1) a valid contract; (2) a material breach; and (3) damages." <u>Abbott Labs., Inc. v. Gen. Elec. Capital</u>, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). ESI admits to the existence and validity of the Lease with Apple Glen. (Doc. # 42; Doc. # 47). However, ESI argues that it did not breach the Lease. (Doc. # 42).

Specifically, ESI indicates that it "paid monthly rental of $145,782 and spent millions maintaining the [p]remises." (Doc. # 42 at 2; Doc. # 4-3 at ¶ 4). ESI's Corporate Representative and full time facilities manager, Hilda Reyes, testified that in 2013 alone, ESI expended $5 million on

9

maintenance and expenses for the premises. (Reyes Dep. Doc. # 41-2 at 38). In addition, Reyes testified that during ESI's occupancy of the property, ESI employed two maintenance technicians for the property. (Id. at 29). She also testified that, when ESI vacated the property, the premises were "in good condition and everything was working." (Id. at 19).

In contrast, Apple Glen has employed various inspectors and experts and has compiled multiple reports detailing various maintenance problems. (Doc. # 42-1; Doc. # 42-2). For instance, Apple Glen argues for replacement of the HVAC system at a total cost in excess of $1.9 million and replacement of the uninterruptable power system at a cost of nearly $1.4 million. (Doc. # 42-1 at 11, 14). Apple Glen contends that such repair is ESI's responsibility under the Lease. (Doc. # 2).

In this Court's view, the parties' clashing contentions regarding the condition of the property and equipment constitute a genuine issue of material fact that must be resolved at trial. If Apple Glen can first show that ESI failed to relinquish the premises or equipment in a first class condition and order of repair, a genuine issue of material fact also exists as to whether such condition was caused by ESI's failure to properly maintain or, in the

alternative, ordinary wear and tear. Therefore, the Court denies the Motion for Summary Judgment as to the issue of ESI's maintenance and repair responsibility.

**B. Notice**

ESI also argues that it is entitled to summary judgment because Apple Glen failed to provide it with the requisite notice of breach, pursuant to Paragraph 20(a)(ii) of the Lease, which provides that:

> failure by Tenant to perform and observe, or a violation or breach of, any other provision in this Lease *and such default shall continue for a period of thirty (30) days after written notice thereof is given by Landlord to Tenant* or if such default is of such a nature that it cannot reasonably be cured within such period of thirty (30) days. . . .

(Doc. # 42 at 12; Doc. # 4-3 at 22)(emphasis added). Specifically, ESI contends that default only occurs if the breach continues for thirty days after written notice. (Doc. # 42 at 12). According to ESI, Apple Glen only sent notice of the alleged breach of the Lease after the Lease had terminated, which did not provide ESI with an opportunity to cure the purported deficiency. (Id.)

The Court generally agrees with ESI's interpretation of the notice clause found in Paragraph 20(a)(ii). Before entering default, the Lease necessitates that the Tenant be given an opportunity to cure the breach in the form of written

11

notice provided by the Landlord. After notice is given and breach has continued for thirty days, the "Landlord may exercise any . . . right or remedy now or hereafter existing by law or in equity." (Doc. # 4-3 at 24). See, e.g., Coin Laundry Equip. Co. Inc. v. Gilbert, 597 So. 2d 926, 927 (Fla. 1st DCA 1992)(reversing judgment for breach of lease after finding that the lease required, as a condition precedent to default, that notice be furnished to the tenant, and that such notice was not furnished); Richards v. Dodge, 150 So. 2d 477, 483 (Fla. 2d DCA 1963)("a landlord cannot declare a forfeiture for non-payment of rent prior to demanding payment.").

However, the Court rejects Apple Glen's argument that if notice was required, it was excused by prior material breaches and concealment of the premises. (Doc. # 47 at 15). First, the Lease does not indicate that lack of notice can be excused in the event of a material breach. (Doc. # 4-3). In addition, the Court has not been presented with sufficient evidence at this juncture to find, as a matter of law, that ESI concealed the premises.

Nevertheless, the Court finds that Apple Glen did provide written notice to ESI that the leased premises and equipment were not being properly maintained. In fact, on two

12

separate occasions before the termination of the Lease, Apple Glen provided written notice to ESI asserting that the premises and equipment were in an unsatisfactory condition. (Doc. # 47 at 14). First, on July 15, 2009, Apple Glen sent a letter to ESI stating that the condition of both the premises and equipment were "inconsistent with the Tenant's obligation to maintain both in a 'first class condition.'" (Doc. # 47-17 at 3). That letter also remarked that the premises were being maintained as "Class B building," as opposed to Class A, and repeatedly remarked that ESI wrongfully removed equipment from the Leased premises. (Id.).

Second, on January 31, 2014, months before the termination of the Lease, Apple Glen sent a letter to ESI containing an extensive condition survey report of the premises and equipment prepared by CMK Design Studio, LLC. (Doc. # 42-2). The CMK Report graded the property on a 4-score scale, where score 1 was given to property "currently in first class condition" and score 4 given to property "currently in unacceptable condition, requiring extensive repair and/or full replacement to attain first class condition." (See Id.). A number of items were alleged to be in less than first class condition, including the asphalt

13

pavement, metal railings, hot water heaters, the HVAC System, and Uninterruptible Power Systems. (See Id.).

The Court accordingly denies ESI's Motion for Summary Judgment to the extent ESI claims that it was not on notice of maintenance deficiencies.

### C. Lost Rent

ESI argues that "Apple Glen is not entitled to recover lost rent or excess electric bills because of its failure to re-let the Premises," namely because the premises were re-let to Citigroup in an ordinary period of time. (Doc. # 42 at 15). In response, Apple Glen has clarified that it only seeks lost rent for the amount of time it would take to restore the premises to a first-class condition, which it believes is a period of six months. (Doc. # 47 at 17-18). The Court is not required to address that question here, as a genuine issue of material fact exists not only as to whether ESI is liable at all, but also whether potential restoration would require the premises to be vacant and unleased. Those matters must be further explored at trial.

### D. Missing Equipment

ESI seeks summary judgment on Apple Glen's claim for missing equipment, arguing that the record is devoid of any evidence that the allegedly missing equipment was located on

14

the premises when ESI took possession in 2001. (Doc. # 42 at 17). In response, Apple Glen asserts that ESI is liable not only for equipment present when it took possession of the premises in 2001, but, as the successor in interest to the original lessee, ESI is also liable for "any property now missing that was located in the building when the original tenant entered the Lease in 1999." (Doc. # 47 at 18-19 (citing Hollywood Shopping Plaza, Inc. v. Schuyler, 179 So. 2d 573, 574 (Fla. 2d DCA 1965)(holding enforceable a lease assignment which stipulated that it operated "with the full force and effect as if the Assignee had executed the lease originally as Tenant named therein")).

While an assignment, rather than a sublease, may place "the assignee in the same position as if it had executed the original lease as the original tenant," the operative assignment states that the "Landlord hereby represents, warrants, covenants and agrees that . . . no event has occurred or condition exists which, with the passage of time or the giving of notice, or both, would constitute a default under the Lease." Schuyler, 179 So. 2d at 574; (Doc. # 4-3 at 52). Because missing equipment would have constituted a default, and given that Apple Glen represented that no default existed at the time of assignment, ESI is not responsible for

15

equipment that may have been missing before it accepted the obligations of the Lease.

Notwithstanding, a genuine issue of material fact exists regarding equipment that may have been present on the premises in 2001, when ESI took assignment of the Lease, which precludes summary judgment on this issue. Omar Cruz, who worked as the facilities manager of the premises during the relevant periods, testified that certain equipment, systems, and components were present "when ESI took the lease and were missing when ESI vacated the Premises," specifically, the security and monitoring system, building automation computer systems, food area and kitchen equipment, redundancy of UPS systems, landscaping, light bulbs and ballasts. (Cruz Aff. Doc. # 47-26 at ¶ 4). ESI, on the other hand, asserts that the Lease expressly permitted it to remove all "telecommunications facilities and personal property that are Trade Fixtures" and that some, if not all, of the disputed "missing equipment" was removed by ESI in accordance with the Lease. (Doc. # 42 at 16). As such, genuine disputes of material fact exist as to the missing equipment, which requires further proceedings at trial to determine the issue. ESI's Motion for Summary Judgment is therefore denied on this ground.

**E. Trade Fixtures**

In addition to damages for the purportedly deficient status of the premises and equipment, Apple Glen claims damages for "increased electrical costs because ESI removed the automated computer system and software to control the HVAC system, and Apple Glen was unable to control the air conditioning system resulting in astronomical electricity bills for the empty building." (Doc. # 47 at 19). Specifically, Dubuque testified that, without the automated computer system to regulate the HVAC system, the electric bills exceeded $50,000.00 monthly. (Dubuque Dep. Doc. # 47-20 at 20).

ESI contends that it had every right to remove the automated computer system for the HVAC, citing Paragraph 20(f) of the Lease, which states that "all telecommunications facilities and other personal property of the Tenant that are Trade Fixtures shall be and remain the property of the Tenant . . . ." (Doc. # 42 at 18; Doc. # 4-3 at 25). Thus, according to ESI, "the Lease expressly permits ESI to remove all telecommunications facilities and personal property that are Trade Fixtures." (Doc. # 42 at 18).

While the Court finds the Lease to be unambiguous as to the right of the Tenant to remove "telecommunications

17

facilities and *other personal property*," ESI has, at this stage, failed to prove that the automated computer system is either (1) a telecommunication facility or (2) its personal property. (Doc. 4-3 at ¶ 20(f))(emphasis added). The phrase "other personal property" used in conjunction with "telecommunications facilities" naturally implies that the telecommunications facilities permitted to be removed are those that belong to the Tenant.  The Lease does not permit ESI to remove *all* telecommunications facilities, but only those telecommunications facilities which belong to it. As such, a genuine dispute as to material fact exists with regard to the ownership of the automated computer system and its classification as a telecommunications facility. Therefore, ESI's Motion for Summary Judgment is denied on this issue.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Express Scripts, Inc.'s Motion for Summary Judgment (Doc. # 42) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 27th day of July, 2015.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel of Record