UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

APPLE GLEN INVESTORS, L.P.,

      Plaintiff,

v.                    Case No. 8:14-cv-1527-T-33EAJ

EXPRESS SCRIPTS, INC.,

      Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Plaintiff Apple Glen Investors, L.P.'s Renewed Motion to Determine Amount of Prejudgment Interest and for Entry of Final Judgment (Doc. # 100), filed on July 18, 2016. Defendant Express Scripts, Inc. (ESI) filed its response in opposition on August 15, 2016. (Doc. # 103). After careful review, the Court grants the Motion as specified herein.

**I.   Background**

A detailed recitation of the facts is unnecessary for the proper disposition of the pending Motion. Rather, an overview of the procedural history suffices for present purposes.

Apple Glen filed suit against ESI in state court on May 27, 2014. (Doc. # 2). Then, on June 25, 2014, ESI removed to

this Court on the basis of diversity jurisdiction. (Doc. # 1). Apple Glen's Complaint brought a single count for breach of contract against ESI. (Doc. # 2). The Court referred the action to mediation; however, mediation resulted in an impasse. (Doc. ## 14, 24). Thereafter, ESI moved for summary judgment, which the Court denied. (Doc. ## 42, 55).

The Court conducted a bench trial, which started September 8, 2015, and concluded September 14, 2015. (Doc. ## 77-81). Apple Glen and ESI each submitted proposed findings of fact and conclusions of law to the Court on November 16, 2015. (Doc. ## 83, 85). On March 10, 2016, the Court entered its Findings of Fact and Conclusions of Law. (Doc. # 86). Therein, the Court determined that ESI was liable to Apple Glen in the amount of $4,654,688.65. (Id. at 64). And, as to prejudgment interest, the Court found Apple Glen was "entitled to prejudgment interest from April 1, 2014, through the date on which final judgment is entered." (Id.). Judgment was entered consistent with the Court's Findings of Fact and Conclusions of Law on March 11, 2016. (Doc. # 87).

ESI subsequently filed a notice of appeal on April 7, 2016. (Doc. # 88). Shortly thereafter, on April 11, 2016, Apple Glen moved the Court to determine the amount of prejudgment interest and enter an amended, final judgment.

(Doc. # 90). Apple Glen also moved for attorney's fees and costs on the same day. (Doc. # 91). The Court denied both motions on April 15, 2016. (Doc. # 92).

The Eleventh Circuit dismissed ESI's appeal for lack of jurisdiction, concluding the Court's March 11, 2016, judgment was not final and appealable. (Doc. # 98 at 2). Furthermore, the Eleventh Circuit remanded the action so that a determination as to the amount of prejudgment interest could be made. (Id.). The Eleventh Circuit instructed, "[o]nce a determination has been made, the district court can enter an appealable final judgment." (Id.).

Apple Glen then filed its pending Motion on July 18, 2016, and ESI filed its response on August 15, 2016. (Doc. ## 100, 103). In their memorandums, the parties contest whether Apple Glen is entitled to prejudgment interest, what the applicable prejudgment interest rate is, and when prejudgment interest stops accruing.

## II. **Analysis**

Generally speaking, "[t]he computation of prejudgment interest is a 'mathematical computation' and 'a purely ministerial duty.'" SEB S.A. v. Sunbeam Corp., 476 F.3d 1317, 1320 (11th Cir. 2007). "The ministerial task of calculating prejudgment interest can be accomplished if the judgment

3

amount, the prejudgment interest rate, and the date from which prejudgment interest accrues have been established." <u>U.S. S.E.C. v. Carrillo</u>, 325 F.3d 1268, 1272 (11th Cir. 2003). "However, if the judgment amount, the prejudgment interest rate, or the date from which prejudgment interest accrues is unclear, the calculation of prejudgment interest is no longer a ministerial act and the court's order is not final." <u>Id.</u>

Here, the Court's Findings of Fact and Conclusions of Law determined the judgment amount to be $4,654,688.65 and further determined the date from which prejudgment interest accrues to be April 1, 2014. (Doc. # 86 at 64). Thus, if Apple Glen is entitled to prejudgment interest, the sole remaining criterion to make a final order—and the calculation of prejudgment interest ministerial in nature—is a determination of the prejudgment interest rate. The Court now considers the parties' arguments.

### 1.    Entitlement to Prejudgment Interest

"Whether a successful claimant is entitled to prejudgment interest is a question of state law." <u>Venn v. St. Paul Fire & Marine Ins. Co.</u>, 99 F.3d 1058, 1066 (11th Cir. 1996) (citation omitted). "'[S]ince at least before the turn of the century, Florida has adopted the position that prejudgment interest is merely another element of pecuniary

4

damages.'" Bosem v. Musa Holdings, Inc., 46 So.3d 42, 45 (Fla. 2010) (quoting Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212, 214 (Fla. 1985)).

Furthermore, the Supreme Court of Florida has repeatedly affirmed its adherence to the "loss theory." Id. (citing Fla. Steel Corp. v. Adaptable Devs., Inc., 503 So. 2d 1232, 1236 (Fla. 1986)). "Under the 'loss theory,' . . . neither the merit of the defense nor the certainty of the amount of loss affects the award of prejudgment interest. Rather, the loss itself is a wrongful deprivation . . . [and] Plaintiff is to be made whole from the date of the loss . . . ." Id. (quoting Argonaut, 474 So. 2d at 214). "'Thus, it has long been the law in Florida that in contract actions, and in certain tort cases, once the amount of damages is determined, prejudgment interest is allowed from the date of the loss or the accrual of cause of action.'" Id. (citation omitted).

"This general rule is not absolute," Broward Cty. v. Finlayson, 555 So. 2d 1211, 1213 (Fla. 1990), however. "'"[I]nterest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable."'" Id. (quoting Flack v. Graham, 461 So. 2d 82, 84 (Fla. 1984)). And, "[u]pon a consideration of

5

[the following] factors, a district court may decide not to award prejudgment interest or to reduce the amount of interest":

> (1) in matters concerning government entities, whether it would be equitable to put the burden of paying interest on the public in choosing between innocent victims; (2) whether it is equitable to allow an award of prejudgment interest when the delay between injury and judgment is the fault of the prevailing party; (3) whether it is equitable to award prejudgment interest to a party who could have, but failed to, mitigate its damages.

Wiand v. Lee, 753 F.3d 1194, 1204 (11th Cir. 2014) (citing Blasland, Bouck & Lee, Inc. v. City of N. Miami, 283 F.3d 1286, 1297 (11th Cir. 2002)).

In this case, the first factor is not applicable because no government entity is involved. As to the second factor, the record does not indicate Apple Glen delayed in bringing this action. ESI vacated the Leased Premises on March 31, 2014, and Apple Glen brought the current action on May 27, 2014. (Doc. # 86 at 2). With less than two months having elapsed between the date ESI vacated the Leased Premises and the date on which suit was instituted, the Court cannot say Apple Glen delayed in bringing the action.

And, regarding the third factor, Apple Glen argues it could not have mitigated its damages because it suffered the damages on the day it took possession of the Leased Premises.

ESI does not provide an argument in direct response to this point. After review of the record, the Court does not find that the third factor weighs heavily enough for the Court to exercise its discretionary, equitable powers to deny an award of prejudgment interest.

Moreover, the Court finds ESI's arguments against the awarding of prejudgment interest unpersuasive. ESI first argues that Apple Glen should not be awarded prejudgment interest because it has not expended any money to repair or replace much of the equipment found to be in a deficient condition. In other words, ESI argues that prejudgment interest should not be awarded because Apple Glen has yet to incur any out-of-pocket expense for much of the equipment determined to be in a deficient condition. ESI's out-of-pocket argument, however, is undercut by Eleventh Circuit and Supreme Court of Florida precedent. For example, in Venn, 99 F.3d at 1066-67, the Eleventh Circuit rejected an attempt to carry over the out-of-pocket limitation for tort actions established in Alarado v. Rice, 614 So. 2d 498, 500 (Fla. 1993), to actions sounding in contract.

Likewise, the Supreme Court of Florida has rejected an attempt to carry over the out-of-pocket limitation for tort actions to contract actions. In Lumbermens Mutual Casualty

Co. v. Percefull, an insurance company refused to pay benefits to a claimant, and the claimant sued for breach of contract. 653 So. 2d 389, 389 (Fla. 1995). The trial court stated in its final order that the claimant would only be entitled to prejudgment interest if it had actually paid the claims out of its own pocket. Id. at 389-90. The intermediate appellate court reversed and the Supreme Court of Florida affirmed the appellate court's decision. Id. at 390. In so doing, the Supreme Court of Florida found the insurance company's windfall argument unpersuasive, noting how the claimant used the prejudgment interest money was inconsequential to whether prejudgment interest should be awarded. Id.

As the Supreme Court of Florida stated in Lumbermens, "[t]he trial court should have granted [claimant's] request for prejudgment interest on the debt created by [claimant's] contract . . . without requiring proof that [claimant] had incurred any out-of-pocket expenses." Id. Thus, on the basis of Venn and Lumbermens, the Court finds ESI's out-of-pocket argument unpersuasive.

ESI further argues prejudgment interest should not be awarded to Apple Glen because the amount of ESI's liability could not have been determined at the outset. But, "[u]nder the 'loss theory,' . . . neither the merit of the defense **nor**

8

**the certainty of the amount of loss affects the award of prejudgment interest**. <u>Bosem</u>, 46 So.3d at 45 (emphasis added). Accordingly, ESI's second argument as to why prejudgment interest should not be awarded to Apple Glen is unpersuasive.

Lastly, the Court notes that its Findings of Fact and Conclusions of Law found Apple Glen "entitled to prejudgment interest from April 1, 2014." (Doc. # 86 at 64). For the reasons above, the Court sees no reason to retreat from that finding. Having rejected both of ESI's arguments, and having determined no equitable reason requires the Court to decline to award prejudgment interest, the Court determines Apple Glen is entitled to prejudgment interest.

## 2.   Prejudgment Interest Rate

"In all cases where interest shall accrue without a special contract for the rate thereof, the rate is the rate provided for in s. 55.03." Fla. Stat. § 687.01. The statutory rate set by Florida law was 4.75% from April 1, 2014, to March 31, 2016; 4.78% from April 1, 2016, to June 30, 2016; and 4.84% from July 1, 2016, to present. FLORIDA'S CHIEF FINANCIAL OFFICER, *Division of Accounting and Auditing*, *Vendors*, *Judgment Interest Rates* (Sept. 6, 2016, 11:05AM), http://www.myfloridacfo.com/Division/AA/Vendors/default.htm . But where parties contract for a specific interest rate to

apply, that contracted interest rate displaces the statutory rate. Republic Servs., Inc. v. Calabrese, 939 So. 2d 225, 226 (Fla. 5th DCA 2006).

Apple Glen argues that the default interest rate set forth in the Lease should apply, whereas ESI argues the Florida statutory prejudgment interest rate should govern. After review, the Court agrees that the interest rate provided for in the Lease applies.

The Lease defines "Default Rate" as "an annual rate of interest equal to (i) the highest rate of interest which may be lawfully charged on amounts past due with respect to the Loan or (ii), if no Loan is then in effect, fifteen percent (15%) . . . ." (PX-4 at ¶ 1). During the relevant time period, Apple Glen, as borrower, was subject to an 18% interest rate on any amounts past due under its loan from USAmeribank, a non-party to this action. (Doc. # 100-1 at 7, ¶ 5). In addition, the Lease defines "Additional Rent" as "all amounts, costs, expenses, liabilities and obligations which Tenant is required to pay pursuant to the terms of this Lease other than Basic Rent." (PX-4 at ¶ 1). "Basic Rent" was set as the "minimum annual rent" in "an annual amount equal to . . . $1,749,384.00 . . . ." (Id. at ¶¶ 1, 4). The Lease also obligated ESI to

10

> at all times, at Tenant's sole cost and expense,
> put, keep and maintain the Leased Premises . . .
> and the Equipment in a first class condition and
> order of repair, except for ordinary wear and tear,
> and shall promptly make all repairs and
> replacements of every kind and nature . . . which
> may be required to be made upon or in connection
> with the Leased Premises in order to keep and
> maintain the Leased Premises in the order and
> condition required . . . .

(Id. at ¶ 12(a)). Moreover, the Lease required ESI to "replace with other operational equipment or parts . . . any of the Equipment . . . which shall have become worn out or unusable for the purpose for which it is intended, or been lost, stolen, damaged or destroyed . . . ." (Id. at ¶ 12(d)).

Under the terms of the Lease, ESI was required to "put, keep and maintain the Leased Premises . . . and the Equipment in a first class condition and order of repair." (Id. at ¶ 12(a)). ESI was also obligated to replace equipment that had become worn out, unusable, lost, stolen, damaged, or destroyed. (Id. at ¶ 12(d)). After a bench trial, the Court concluded that ESI had breached these duties and that Apple Glen suffered damages in the amount of $4,654,688.65. Because the Court's quantification of damages owed to Apple Glen rests on the obligations ESI assumed under the Lease, the amount due is Additional Rent—i.e., an "amount[], cost[], expense[], liabilit[y] and obligation[] which Tenant is

required to pay pursuant to the terms of this Lease other than Basic Rent" (PX-4 at ¶ 1)——and the Default Rate of 18% applies.

Notably, this Court's interpretation of the Lease is consistent with that of the court in <u>Apple Glen v. Merck-Medco Managed Care, L.L.C.</u>, No. 09-27647-G (Fla. 13th Cir. Ct. Mar. 28, 2014). In <u>Apple Glen</u>, the tenant contracted to replace the roof of the Leased Premises with a one-ply system; however, Apple Glen took the position that a two-ply system was required to maintain the building in a first-class condition. (Doc. # 100-2 at 2). Because tenant would not purchase the two-ply system, Apple Glen paid the difference between the one-ply and two-play systems, and thereafter brought a breach of contract action. (<u>Id.</u>). The court found Apple Glen entitled to the roof replacement costs, plus interest at the Default Rate, i.e., 18%, as set forth in the Lease. (<u>Id.</u> at 5).

### 3.  When Prejudgment Interest Ends and Postjudgment Begins

"'In a diversity case [courts] follow the state law governing the award of [prejudgment] interest.'" <u>SEB</u>, 476 F.3d at 1320 (quoting <u>Royster Co. v. Union Carbide Corp.</u>, 737 F.2d 941, 948 (11th Cir. 1984)) (second alteration in

original). Both parties agree that Florida law applies in this case. And, under Florida law, "prejudgment interest accrues until the date of the judgment after which postjudgment interest begins to accrue." Id. at 1321. Further, "Florida law does not allow for a gap in the award of prejudgment and postjudgment interest." Id. at 1320 (citing Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead, 162 F.3d 1101, 1110-11 (11th Cir. 1998)).

While state law governs prejudgment interest in diversity cases, federal law governs postjudgment interest. G.M. Brod & Co., Inc. v. U.S. Home Corp., 759 F.2d 1526, 1542 (11th Cir. 1985) (noting district court correctly applied the federal interest statute in a diversity case). The applicable federal statute provides "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment . . . ." 28 U.S.C. § 1961(a). Such "postjudgment interest compensates the successful plaintiff for being deprived of compensation for the loss from the time between the 'ascertainment of the damage' and the payment by the defendant." Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320, 1339 (11th Cir. 1999) (citing Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835-36 (1990)).

The parties disagree as to when prejudgment interest should end and postjudgment interest should begin. In particular, Apple Glen argues postjudgment interest should not begin to accrue until the entry of a final, appealable order; thus, Apple Glen argues postjudgment interest should begin to accrue when——i.e., prejudgment interest should not stop accruing until——the Court enters the amended judgment. In contrast, ESI argues postjudgment interest should begin to accrue from the date the judgment that establishes the prevailing party's entitlement to an award was entered; thus, ESI argues postjudgment interest began to accrue when the Court entered its original judgment on March 11, 2016. After review, the Court determines that prejudgment interest ceased accruing on March 11, 2016, (the date the Court entered its original judgment) and postjudgment interest began to accrue on March 12, 2016.

Although Apple Glen correctly cites Dishman v. UNUM Life Insurance Company of America, 269 F.3d 974, 990-91 (9th Cir. 2001), as holding that the term "judgment" as used in 28 U.S.C. § 1961 means a final, appealable order, the Eleventh Circuit has not adopted Dishman, nor has it addressed the exact issue that the Court faces. But, the Third and Sixth Circuits have taken contrary positions to Dishman. Skretvedt

v. E.I. DuPont De Nemours, 372 F.3d 193, 217 (3d Cir. 2004)
("while postjudgment interest can begin to accrue on a non-
final judgment . . ., the phrase 'any money judgment' in §
1961(a) 'requires that the judgment at issue award a fixed
amount of fees to the prevailing party in order to trigger
the post-judgment interest period'") (citation omitted);
Skalka v. Fernald Envt'l Restoration Mgmt. Corp., 178 F.3d
414, 429 (6th Cir. 1999) ("the better rule is for plaintiffs
to be entitled to post-judgment interest from the date of
entry of the initial, partial judgment . . ., even though
that judgment was not yet appealable. This holding is
consistent with the text of § 1961 and the common meaning of
the word 'judgment'").

Furthermore, as Apple Glen concedes, the plain language
of § 1961 does not define "judgment" as a final, appealable
order. Rather the term "judgment" as used in the third
sentence of § 1961 refers to the term "money judgment" and
"an analysis of the language of § 1961(a) leads to the
conclusion that a 'money judgment' is the judgment that
unconditionally entitles the prevailing party to," Associated
Gen. Contractors of Ohio, Inc. v. Drabik, 250 F.3d 482, 494
(6th Cir. 2001), the award.

Notably, in a recent case, the Eleventh Circuit cited Drabik with approval and as being in accord with its decisional authority. See Mock v. Bell Helicopter Textron, Inc., 456 Fed. Appx. 799, 803 (11th Cir. 2012). In Mock, the district court entered its judgment awarding plaintiff damages and then three years later entered an order awarding a sum certain in attorney's fees. Id. at 800. The district court, however, failed to award interest on costs and fees from the date of the judgment awarding damages. Id. The plaintiff appealed and the Eleventh Circuit reversed. Id. at 803. In so doing, the Eleventh Circuit reasoned that it was the judgment on the merits, which ascertained liability, that constituted the judgment for purposes of § 1961.

The Court also finds the reasoning of Georgia Association of Retarded Citizens v. McDaniel, 855 F.2d 794 (11th Cir. 1988), persuasive. In McDaniel, the district court entered an order awarding a sum certain in costs, but later amended its order and the award of costs. Id. at 795. In its order amending the award of costs, the district court declared that the cost award was to bear interest from the date of judgment. Id. The defendants moved for reconsideration, prompting the district court to strike the portion of its order allowing for interest on costs. Id. On appeal, the

Eleventh Circuit concluded that when a district court awards costs, interest accrues from the date of the original judgment. Id. at 799. The court went on to state that even when "an award of costs is modified by the district court, interest on the revised award should run from the date of the original award because that is the date on which the correct judgment should have been entered." Id. (citation and internal quotation marks omitted).

Similar to the judgment in Mock that ascertained liability and thus was the trigger for postjudgment interest under § 1961, the Court's judgment dated March 11, 2016, ascertained liability in this case. Indeed, from March 11, 2016, Apple Glen was entitled to a damages award under the Court's judgment. The March 11, 2016, judgment also quantified the damages due to Apple Glen and set the date from which prejudgment interest began to accrue. Even though the Court must now amend its judgment in order to reflect the applicable prejudgment interest rate, under the rationale of McDaniel, that does not affect the trigger point for purposes of § 1961.

Furthermore, the Court notes that Apple Glen's reliance on SEB, 476 F.3d 1317, is unpersuasive given the marked procedural differences. In SEB, a jury returned a verdict and

the district court entered a judgment thereon, which included an award of prejudgment interest for the period between the date of the verdict and the date of the judgment. Id. at 1318. On the first appeal, the Eleventh Circuit affirmed the jury verdict, but remanded with instructions for additional prejudgment interest. Id. On remand, the district court entered an amended judgment consistent with the Eleventh Circuit's mandate, but determined that prejudgment interest would accrue from its original judgment rather than the amended judgment. Id. at 1319.

On a second appeal, the Eleventh Circuit was confronted with two questions: "first, under Federal Rule of Appellate Procedure 37, when postjudgment interest began to accrue; and second, whether prejudgment interest accrued until that date." Id.

> Rule 37 governs the award of postjudgment interest by a district court after an appeal. See Fed. R.App. P. 37. When the appellate court affirms "a money judgment in a civil case," postjudgment interest "is payable from the date when the district court's [original] judgment was entered," unless the law provides otherwise. Fed. R.App. P. 37(a). When the appellate court "modifies or reverses a judgment with a direction that money judgment be entered in the district court, the mandate [the appellate court issues] must contain instructions about the

> allowance of interest." Fed. R.App. P. 37(b). "If
> the mandate is silent about interest, . . . the
> district court on remand has no choice but to begin
> postjudgment interest with entry of the postremand
> judgment." 20A James Wm. Moore et al., *Moore's*
> *Federal Practice* § 337.12[3] (3d ed.2006); *accord*
> 16A Charles Alan Wright & Arthur R. Miller, *Federal*
> *Practice and Procedure* § 3983 (3d ed.1999).

Id.

After analyzing Rule 37, the court determined that postjudgment interest began to accrue from the amended judgment because the appellate court had modified the original money judgment and was silent as to interest. Id. at 1319-20. Importantly, the court's holding in SEB was based on the plain language of Rule 37. The court also determined that Florida law did not allow for a gap period between pre- and postjudgment interest, and thus prejudgment interest ran until the amended judgment. Id. at 1320-21.

In contrast to SEB, Rule 37 simply is not applicable to the instant action. The Eleventh Circuit has not affirmed, modified, or reversed the Court's original money judgment. And that is a paramount differentiation because Rule 37 carries with it the default rule that postjudgment interest accrues from the date of the amended judgment. Thus, with Rule 37 not in play neither is its companion default rule. In

light of this procedural difference, SEB is not controlling or instructive here.

In sum, the Court determines that the judgment dated March 11, 2016, demarcates the point at which prejudgment interest ceases to accrue and postjudgment interest begins to accrue. That judgment found Apple Glen entitled to damages, quantified those damages, and determined when prejudgment interest would begin to accrue. In other words, the Court's March 11, 2016, judgment is a money judgment that meaningfully ascertained damages and thereby triggered postjudgment interest under § 1961. Cf. Johansen, 170 F.3d at 1339 (noting that "[w]here the judgment is not supported by the evidence and is vacated and damages are determined at a new trial, the damages were not 'ascertained' in any meaningful way until the entry of the second judgment").

## 4.   Calculation

The annual interest rate is calculated by multiplying the judgment amount by the Default Rate; thus, the formula is $4,654,688.65x.18, which equals $837,843.96. To calculate the per diem interest rate, the annual interest rate is divided by 365; thus, the formula is $837,843.96/365, which equals $2,295.46. A total number of 710 days elapsed between April 1, 2014, and the Court's March 11, 2016, judgment. Therefore,

the total prejudgment interest that has accrued is calculated by $2,295.46x710, which equals $1,629,776.60. Adding the accrued interest to the judgment amount results in a grand total of $6,284,465.25.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Plaintiff Apple Glen Investors, L.P.'s Renewed Motion to Determine Amount of Prejudgment Interest and for Entry of Final Judgment (Doc. # 100) is **GRANTED** as provided above.

(2)   The Clerk is directed to enter an amended judgment in favor of Plaintiff Apple Glen Investors, L.P. in a sum of **$6,284,465.25** (representing $4,654,688.65 in damages and $1,629,776.60 in prejudgment interest), which shall accrue postjudgment interest at the federal statutory rate as prescribed by 28 U.S.C. § 1961, for which sum let execution issue.

(3)   This case was previously closed, and it shall remain so.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 8th day of September, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE